[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is a suit for dissolution of marriage brought by the plaintiff wife against the defendant husband. The parties were married on August 1, 1981 in Norwalk, Connecticut. There are three children issue of the marriage: Kevin James Hychko, born July 13, 1983; Brian John Hychko, born June 22, 1988 and Heather Noelle Hychko, born December 26, 1989; 12, 7 and 5 years of age. The children are loved very dearly by each of the parties, and it is probably the love of the children that held this marriage together as long as it has. The parties resided together in Fairfield until January 27, 1995 when the defendant moved to a condominium in Waterbury. CT Page 12813
Both parties are professionals; the plaintiff is a certified dental technician specializing in cosmetic dentistry working for two dentists in Fairfield at the Center for Oral Rehabilitation, one specializing in implant dentistry and the other specializing in prosthodentistry. She attended two years of specialized training after high school to receive her certificate as a dental technician. The defendant graduated from St. Francis College in Biddeford, Maine majoring in sociology and later attending night school at Sacred Heart University receiving his MBA degree. He is the manager of medical staff services at Bridgeport Hospital and has held that position for five (5) years. Both parties are 41 years of age and the health of both parties is "fine."
The parties have reached an agreement on the issue of custody and that is that there shall be joint legal custody of the minor children, the children to reside principally with the plaintiff. The parties have also reached an agreement on the issue of visitation in that they agree that the defendant should have liberal and flexible visitation with the children upon reasonable notice. The defendant is in favor of a set schedule. However, the plaintiff points out that the children do have many activities and children's parties which she believes are in the children's best interests and that some of these engagements have to take precedence over the defendant's visitation. This, of course, is a delicate balance which the parties together must consider in arriving at decisions in this regard. Hopefully, the parties will benefit from the Parenting Education program which the court has ordered each to attend. When the court orders joint custody, the parties must consult on all major issues effecting the children. This is controlled by § 46b-56a(a) of the General Statutes which provides as follows:
 (a) For the purposes of this section, "joint custody" means an order awarding legal custody of the minor child to both parents, providing for joint decision-making by the parents and providing that physical custody shall be shared by the parents in such a way as to assure the child of continuing contact with both parents. The court may award joint legal custody without awarding joint physical custody where the parents have agreed to merely joint legal custody.
The defendant is concerned lest he have access to the children's school records and medical records. Section 46b-56(e) CT Page 12814 of the General Statutes provides that "[a] parent not granted custody of a minor child shall not be denied the right of access to the academic, medical, hospital or health records of such minor child unless otherwise ordered by the court for good cause shown." (Emphasis supplied.) In a joint custody situation, the parent who does not have physical custody has an even greater right to access. The defendant, however, wishes to share the children's papers and report cards.
The court shall enter orders that the parties are to share such school papers that the children bring home daily, other than homework assignments, and shall share report cards. Both parents shall sign the report cards before they are returned to school. The plaintiff shall keep the defendant informed of any illness of any of the children and shall share reports of any physicians or medical or dental providers.
The marriage of the parties has broken down irretrievably. The court finds that neither of the parties is at fault for the breakdown. The parties have grown apart after years of little or no communication, a lack of cooperation on the part of each, and different types of interests. The defendant testified that the breakdown was evident as early as 1985.
When the parties married, they had been dating for a period of nine months. They came into the marriage with about equal value of assets. They purchased their first home in 1985 in Norwalk, contributing approximately $3,000 each from parents and combined savings. In 1987 they sold that home and purchased their present home in Fairfield with $103,000 profit realized from the sale of the Norwalk home. The parties agree that the property is valued at $239,500. The present principal balance of the first mortgage is $134,700 and there are outstanding liens to CT. Housing Investment Fund of $1,258 and to Shawmut Bank Home Equity credit line of $9,519. Total encumbrances, therefore, amount to $145,478 with a resultant net equity of $94,000.
There are two other principal assets of the parties: the plaintiff's inheritance from her father's estate valued at $42,809 and the defendant's pension. As of March 13, 1995, the defendant's pension would pay him $239 monthly at normal retirement age. There has been no other evidence of valuation.
As to liabilities, exclusive of legal fees, the plaintiff's affidavit shows indebtedness to Home Depot of $813, Chase Visa of CT Page 12815 $12,780 and ATT Visa of $1,000. Of these Visa amounts, $5,000 was a down payment when the plaintiff purchased the Ford Explorer. The defendant's financial affidavit shows indebtedness to Associates Visa in an amount of $7,250, Caldors — $350 and Steinbach's — $350. The plaintiff proposes that each party pay her or his own liabilities. The plaintiff, however, seeks legal fees of $6,721 plus fees for October 16 and 17 which, at $250 per hour, adds another $3,000 to this total.
Other than the division of assets of the parties, there are three other issues that need to be commented upon. The first of these is the disagreement between the parties as to appropriate alimony and support orders, the second of these is the issue of the defendant's present residence in Waterbury, and finally, the episode concerning the BB air rifle.
As to support, each of the parties have submitted Child Support Guideline work sheets. The plaintiff's work sheet results in a computation of $302 per week to be paid by the defendant. The first of the defendant's work sheets shows $274 and the second one $260. The plaintiff's gross employment earnings are $26,000 per year, $2166.66 per month or $500 per week. The defendant's gross employment earnings are $52,458, $4,371 per month or $1,009 per week. Based upon the family support guidelines, the defendant's obligation for support is $260 per week. The court, however, in considering the provisions of §46b-84(c) of the General Statutes sets a support figure of $275 per week. In arriving at its decision, the court has readjusted both the plaintiff's and defendant's guideline work sheets to reflect proper deductions from gross income and considered the income tax consequences of its orders.
The defendant has in the past done counseling work under the name Business Practices Appraisal Services. This business provided valuation services to physicians who wished to sell their medical office practice. The defendant testified he has discontinued this work, although he did one such valuation in 1995 for $1200. The calculation of child support does not include any income from consulting.
The second matter worthy of notation in this memorandum is the fact that the defendant is living in a condominium unit in Waterbury. He has not paid the $600 per month rent as noted on his financial affidavit. This has accrued as a debt and he is indebted to Willow Run, Inc. in the amount of $4,010 as of CT Page 12816 October 31, 1995 less any credits he may earn between October 15 and October 31. He is hopeful that his financial situation will permit him to move closer to his children.
Finally, the court must mention the gun incident while the defendant was visiting his brother in Pennsylvania. The defendant did step away from his son while he was firing a BB air rifle in target practice. Since that time, the defendant has attended a course in firearm instruction and has received a certificate presumably in accordance with § 29-36f(b). As previously noted, Kevin is 12 years of age. I am sure the defendant will be particularly careful in his instruction and that proper safety will be observed constantly. I find no reason, therefore, for any special consideration of this issue. Clearly, the defendant has equally as much consideration for his children's safety as does the plaintiff.
On the issue of alimony, the court observes that the opportunity for the future acquisition of capital assets and income is much greater for the defendant than for the plaintiff. The court has taken that factor into consideration in the split of the equity of the family home.
With respect to alimony, support and a division of the property of the parties, the law to be considered has been stated as follows:
 To begin with, our alimony statute does not recognize an absolute right to alimony, General Statutes § 46b-82; Thomas v. Thomas, 159 Conn. 477, 487, 271 A.2d 42 (1970); `This court has reiterated time and again that awards of financial settlement ancillary to a marital dissolution rest in the sound discretion of the trial court.' (Citation omitted.) Although the court is required to consider the statutory criteria of length of marriage, causes for dissolution, the age, health, station in life, occupation, amount and sources of income, assets and opportunity for future acquisitions of assets of each of the parties, (citation omitted), no single criterion is preferred over all the others. In weighing the factors in a given case, the court is not required to give equal weight to CT Page 12817 each of the specified items. Nevertheless, it is rather obvious that in making financial determinations, the financial circumstances, both actual and potential, are entitled to great weight. Valente v. Valente, 180 Conn. 528, 530 (1980); Watson v. Watson, 221 Conn. 698, 710 (1992).
As has been said by the appellate court in the recent case ofEmanuelson v. Emanuelson, 26 Conn. App. 527, 530, 531 (1992):
 "General Statutes § 46b-81(c) requires the trial court to evaluate certain factors before distributing the parties' assets in a marital dissolution action. Although the court must evaluate all the factors listed, it has broad discretion when applying the statutory factors to assign the parties' assets. O'Neill v. O'Neill, 13 Conn. App. 300, 312, 536 A.2d 978, cert. denied, 207 Conn. 806, 540 A.2d 374 (1988). . . .
 The statutory factors for determining alimony in § 46b-82 are almost identical to the factors used to distribute property in § 46b-81(c)."
On the issue of custody and visitation, the court must consider the best interests of the minor children. As previously noted, both parties have demonstrated tremendous love for their children. Both parties are fit parents to have custody of the children and the orders entered by the court have been entered considering the provisions of § 46b-56 of the General Statutes.
With regard to the plaintiff's claim of counsel fees, the court has considered the provisions of § 46b-62 of the General Statutes. While no specific award is herein set forth, the court has considered the issue in the assignment of property pursuant to § 46b-81 of the General Statutes.
The court has considered, also, all of the criteria of §§46b-81, 46b-82, 46b-84 and 46b-215(b) of the General Statutes together with all of the evidence and case law. Since "[i]t would serve no useful function to require the trial court CT Page 12818 ritualistically to rehearse the statutory criteria that it has taken into account," Scherr v. Scherr, 183 Conn. 366, 368 (1981), this court will not recount those statutory criteria and the evidence, other than as has been previously stated. "The court is not obligated to make express findings on each of these statutory criteria." Weiman v. Weiman, 188 Conn. 232, 234 (1982).
Suffice to say that the court must consider all the statutory criteria in determining how to divide the parties' property in a dissolution proceeding, Leo v. Leo, 197 Conn. 1, 5 (1985), and that the court need not give equal weight to each factor. Kane v.Parry, 24 Conn. App. 307, 313-14 (1991).
The court, in addition to the foregoing findings, finds as follows:
1. There is the requisite jurisdiction.
2. The allegations of the complaint have been proved and are true.
3. There has been an irretrievable breakdown of the marriage.
4. Neither party is at fault for the breakdown of the marriage.
The court enters the following orders:
1. A decree of dissolution of the marriage shall enter on the grounds of irretrievable breakdown of the marriage.
2. There shall be joint legal custody of the three minor children, the children to reside principally with the plaintiff.
3. Pursuant to the provisions of § 46b-56a(a), the parties shall consult regarding all important decisions affecting the children except for those decisions considered to be day-to-day decisions. Should there be any disagreement between the parties regarding any decisions affecting the children, the parties shall return to court for further orders.
4. The parties shall share the children's papers that they bring home from school on a daily basis, other than homework assignments, and both parents shall sign report cards before CT Page 12819 they are returned to school. The plaintiff shall keep the defendant informed of any illness of any of the children and furnish copies of any written reports of any physician or medical or dental providers.
5. The defendant shall continue to maintain the minor children on his medical insurance policy through his employment for so long as he is obligated to pay support. Any uninsured or unreimbursed medical or dental expense incurred for the minor children shall be shared equally by the parties. The plaintiff shall have the benefit of the provisions of § 46b-84(d) of the General Statutes.
6. The defendant shall maintain life insurance with a payable upon death value of $200,000 naming the plaintiff as trustee for the children as irrevocable first beneficiary thereof, the same to be maintained free of any loans or liens for so long as the defendant is required to pay support. Evidence of such insurance shall be furnished to the plaintiff within thirty (30) days of the date hereof and annually thereafter.
7. The defendant shall pay support to the plaintiff in the amount of Two Hundred and Seventy-five ($275) Dollars per week. A contingent order for wage withholding shall enter, the parties having waived the provisions of § 52-362 of the General Statutes.
8. The defendant shall pay to the plaintiff by way of alimony the sum of One Hundred and Fifty ($150) Dollars per week terminable upon the earliest to occur of the following events: the death of either of the parties, the plaintiff's remarriage or January 1, 2003. A contingent order for wage withholding shall enter, the parties having waived the provisions of § 52-362 of the General Statutes.
9. The defendant shall have the income tax dependency exemptions for Kevin and Brian. The plaintiff shall have the income tax dependency exemption for Heather.
10. The defendant shall have reasonable and liberal rights of visitation with the minor children upon reasonable notice which shall be not less than one floating week night, every other weekend and every other legal holiday. Christmas Eve and Christmas Day, New Years Eve and New Years Day each to be treated as separate holidays. Each of the parties shall have CT Page 12820 the children with her or him on Mother's Day and Father's Day, as the case may be, and on each of her or his birthdays. The defendant shall also have the children with him during his vacation and during part of the children's Christmas, winter and spring school vacations. The parties shall endeavor to share the children's birthdays. Activities in the children's best interests must, except upon holidays, interfere with the above visitation general outline. Should there be any dispute between the parties regarding visitation, the matter shall be referred to Family Relations for mediation. Should such mediation be unsuccessful, they shall return to court for further orders. The parties are ordered to participate in the Parenting Education Program pursuant to § 46b-69b of the General Statutes.
11. The plaintiff shall pay to the defendant the sum of Twenty-seven Thousand Five Hundred ($27,500) Dollars as an assignment of property pursuant to the provisions of § 46b-81
of the General Statutes. Said sum shall be paid upon receipt of her inherited funds, but in no event later than six (6) months from the date hereof. The plaintiff shall have exclusive possession of the marital home at 41 Lynnbrook Road in Fairfield from and after the date hereof. The defendant shall quitclaim all of his right, title and interest in and to said real property upon receipt of said funds. Until such time, title to said property shall be as tenants-in-common. The payment of the Twenty-seven Thousand Five Hundred ($27,500) Dollars shall be a nontaxable transfer of property. The plaintiff shall be responsible from the date hereof for all payments on the first mortgage, the CT Housing Investment Fund and Shawmut Bank and shall indemnify and hold harmless the defendant from any claims or demands thereon. The plaintiff shall be responsible for all repairs and maintenance of said property from the date hereof and all claims for taxes, insurance or other claims and demands connected with said property and shall indemnify and hold harmless the defendant thereon.
12. The 1986 Pontiac Bonneville shall be wholly the defendant's free of any claim or demand by the plaintiff. The defendant should file a claim for lost or missing motor vehicle title.
13. The defendant shall be wholly responsible for the following liabilities listed on his financial affidavit: Associates Visa, Caldors, Steinbachs and Dr. Robert Goldman and shall CT Page 12821 indemnify and hold harmless the plaintiff thereon. The plaintiff shall be wholly responsible for those liabilities listed on her financial affidavit and shall indemnify and hold harmless the defendant from any claims or demands thereon.
14. The defendant's pension shall be wholly his free of any claim or demand of the plaintiff.
15. Except as otherwise provided herein, each party shall retain those assets listed on her or his financial affidavit.
16. The plaintiff shall retain all furniture and furnishings in the residence at 41 Lynnbrook Road in Fairfield except for those 18 items listed on the defendant's "Proposed Divorce Settlement" dated October 16, 1995, except for item numbered 10 and item numbered 15. As to item numbered 8, this property shall be wholly the defendant's. The plaintiff shall reproduce and/or photocopy such pictures and papers and art work as she chooses at her expense. Such reproduction and photocopying shall be accomplished within three (3) weeks of the date hereof and then made available to the defendant. As to item numbered 11, the VCR tapes shall be divided between the parties. The tapes of "Snow White", "Cinderella", "Dumbo" and "Pinocchio" shall be among the tapes to be made available to the defendant. This property shall, likewise, be made available to the defendant within three (3) weeks of the date hereof.
17. Any previous restraining order involving these parties shall be vacated.
18. Should the plaintiff intend to change the children's principal residence to a location outside the State of Connecticut, she shall first give notice to the defendant ninety (90) days prior thereto.
19. The parties shall each keep the other informed upon any change of address or telephone numbers within forty-eight (48) hours of such change.
20. Should either party remove the children from the State of Connecticut for a period in excess of forty-eight (48) hours, that party shall inform the other party of the telephone number and address at which the children may be reached. If CT Page 12822 such party is traveling with the children, the children shall be permitted to call the other party at least once every forty-eight (48) hours.
21. Each party shall pay her or his own attorney's fees.
22. The plaintiff's maiden name of Deidre Lahey shall be restored to her and she shall hereafter be known by such name. Orders shall enter in accordance with the foregoing.
EDGAR W. BASSICK, III, JUDGE